One of my favorite authors is C.S. Lewis, and opining on the issue of fidelity, he said that fidelity has sort of a binary or an absolute component to it, in that a spouse that was faithful most of the time would be unfaithful. And so I think in this case, when you look at what the government did with respect to its own written plea agreement between itself and Mr. Hernandez-Contreras, it wasn't even faithful most of the time. It was completely unfaithful. It didn't object to the PSR, which recommended something different than what it had. But when you read the transcript, they said our recommendation, Judge, is that it's four-level enhancement, as we agreed to in the plea agreement. Well, as I noted in my... What do you want him to say? Well, the government had several different things it could have said. It could have said nothing. It could have said... Well, then you would have said, well, they're not advocating on it. They're not standing up for their recommendation. No, that's not true at all. I mean, you know... It's hypothetical. And there's actually a case in my reply brief, and I'd have to look back at what the site is for, where the government did say a number of things that were inconsistent with its recommendation, and then at the end said, well, but we still stand by our recommendation. Well, but they started out here all the way through. They started at the very beginning and said we stand by our recommendation. I don't think... We made that agreement. We stand by it. At the end, they said we stand by it. You can't say you stand by the agreement, but the law requires you to do something different. We stand by our agreement, but... So let me ask you, sir. Your position is that the government is supposed to stand there mute. No. Mute. That's what it is. If the defense counsel makes an argument that's not supported by law. With defense counsel... So you're supposed to... So the government's supposed to say, okay, well, it's... No, no. The government... Because you figure it out on your own. The government could have submitted. The government could have said, you know, Aguila Montes is pending on Bach forever, it appears apparent at this moment, but it could have said... Did defense counsel tell the court that Aguila Montes was pending on Bach? Yes, of course. And one of the other things that the government could have said is that Becker is distinguishable because Becker is a completely different case. One of the things that the government could have said, it could have been correcting its analysis about what I did, it said, well, we only filed our papers because defense counsel raised this issue. That's not true. It was raised by the PSR, and then it was, I guess, raised by my duty under I think rule 32F to object or else I'd have waived this objection. But the government... Was the defendant, when he pled guilty, what was he informed about the potential guideline sentence here? Nothing. That wasn't, I don't think, part of the plea colloquy. So it's not the... Just statutory maxim. I just know the practice in the Second Circuit. It's not to... There's no practice in the guideline range, notwithstanding that it's not binding. In the Southern District, it's a case, it's a judge-by-judge practice. I used to work in law school for the late Napoleon Jones, and he would go through a very detailed guideline recommendation or possible guideline calculations, and that got him in trouble in one case where we were reversed. But some judges just say, we'll find out when the probation report's prepared. In this case, this was one of these fast-track plea agreements where actually we had the guidelines in the plea agreement and we stipulated to immediate sentencing, but Judge Thompson decided he was going to take a different route and he was going to order the probation report. And so, no, there were no guideline consequences explained to him except what was agreed to in the plea agreement, which is a plus four. And I think the important thing I really want to emphasize here is that 1326 cases are different in a way from a lot of other cases because they are animated almost primarily by the prior, any kind of prior record. Here we have a 30-year-old prior, but the best analogy I can make is the drug case. Drug cases are animated almost exclusively by the type and quantity of the drug. And this case in, or this court in Luna Herrera, which was a double-counting case where someone said, look, this is unfair to count points for criminal history, which these did not count, by the way, and also to count them under 2L. That's double-counting. This court said, no, because those are two separate things and what 2L1.2 is doing is looking at the defendant's status. That's something the government has to prove. It's similar to an element. It's a quasi-element. And so here the judge was making a finding about something that the government would have been obligated to prove if this were going forward in a trial or if we didn't have a deal that was contrary to what the government did. We had, as part of our deal, a prior conviction that we agreed would animate this sentence. And when the judge said, well, I think I'm going to look at a different prior, the government said, yes. But you knew that there was a possibility he may not be willing to sentence without a PSR, right? Well, when I saw, when the information was filed and I saw the initials at the end of it, I knew there could be trouble. And I've sort of outlined what I think about that in my brief. Go ahead. Isn't there a provision in the plea agreement that if the government gets additional information, it can change? You betcha. And I'm glad you asked that, because it didn't have any additional new information. This information it had prior to, and it conceded that in its brief. I noted that in my reply brief. No, what do you mean? I mean, how are you distinguishing this information from other information? Because it's not new. The government said, we had all this information to begin with in the beginning of my reply brief. I said, consider that the government, the decision makers at the U.S. Attorney's Office in the Southern District, they had all this information. They didn't give it significance. I'm sorry? Well, we can debate that. Well, if they had all the information, that's a given. Your point is that they knew about the 1979 first degree burglary conviction when they negotiated the deal with you. Exactly. And they made that deal. And so if they're now to say, well, you know, we had second thoughts. And now we've decided something different, then I would point this court to this court's prior decision in Franco Lopez. And in that case, what happened was the defendant had negotiated for a plea agreement that said the government will recommend safety valve as long as the probation office makes a finding that you're eligible, that you didn't have an increased managerial role. Then the government turned around and turned over evidence that it had, that it knew it had from the beginning, that indicated the defendant did in fact have an increased managerial role. This court said, you know, that deal that it cut with the defendant was illusory because here it says it's dependent upon this finding by probation, and then the government knew that probation would have to make an adverse finding once it turned over the evidence that it had, that it knew it had from the beginning. Well, you know, the other thing, this was a very old, this was in 1979, it's 31 years old, and could have argued to the district judge, and that's so old under the 3553A factors, you should disregard it. Well, I shouldn't have to do that because. Well, you should have to do it. The point is, is that that plea agreement also recognized that the district court was free to come up with a sentence it thought was appropriate. True, but the government couldn't get behind the district court's decision to go forward. And there was. Suppose the government said right at the end, look, Judge, this is consistent with our practice. This is our solid recommendation. We think you should impose a four-level increase. Forget what was in the PSR. Judge says, nope, my job. My job is to sentence. I get to make the decision. Let's take that hypothetical and add the factor that's missing, and that is the modified categorical approach, which didn't happen because the judge didn't follow Rule 32. The dialogue that we're having here is, contains an assumption. I think it's sort of an unsaid assumption that this would have, in fact, triggered the plus eight. But that's not necessarily true, you know, for a variety of reasons. Well, let's just assume for a moment that it qualified as a plus eight. Okay. Under that situation, then Mr. Hernandez-Contreras must prevail under Franco-Lopez because if that's true, then the government made an illusory deal with Mr. Hernandez-Contreras. To come in at the 11th hour, it seems like this deal was a mistake, Your Honor, and the government. No, no, no. It sticks to the deal all along. And the judge says, my responsibility. In that hypothetical, what evidence is the judge relying on? Because there had to be evidence presented to him, and it was not presented to him. It comes from the probation PSR. The PSR, once it's contested, then the burden shifts. Once it's contested, there has to be something to support it. Was it contested that he had this conviction? Yes, I objected. And I said, this doesn't qualify. There's no proof of this conviction. The government bears the burden. If this conviction does, in fact, exist, this court's obligated to do a modified categorical approach, which it just completely glossed over. Just completely. So, I mean, to me, this is just a no-brainer. It's clear cut. If you say, look, this conviction requires you, judge, if it exists at all. I object to it on all grounds. But if it exists at all, you are required by law, I mean, and this is not new law, not new law at all, to do a modified categorical approach. Under Taylor, there's a definition of burglary. We all know that California burglary doesn't fit that definition. That is well over broad. And the judge just says, I'm not going to do it. In fact, in his written order, his probation has given me some evidence. Well, that, whatever that was, wasn't disclosed to me as required. Now, even if the judge were allowed to say, well, under Rule 32, I think, E3, the probation office, there is a small provision that allows there to be a confidential recommendation. But all facts, all reports, arrest reports, any kind of information that supports the recommendation has to be turned over. It was not in this case. The only thing that's protected under E3 is just the recommendation itself. And so when Judge Thompson, in his order, says, well, probation has provided me with evidence, we don't know what that was. It certainly wasn't turned over to me. The government didn't provide evidence, which is consistent with that's one part where it did live up to the deal. It didn't try to prove it up. But Judge Thompson didn't have anything else to rely upon. And you would need that. I mean, this is pretty clear-cut stuff for burglary, that a modified categorical approach would have applied to tell whether this was the privilege of the defendant or not. And I think that's the case that California first-degree burglary qualifies as a crime of violence. Right. But it wasn't found as a crime of violence in this case. Becker's distinguishable on several grounds, and that's one of the first ones. And the second one is if Becker, the Court, did in fact do the modified categorical analysis. Here, Judge Thompson just decided that that wasn't the law, never had heard of it before, just completely unfamiliar with it. I asked for it. It didn't happen. Okay. And strict compliance. All right. You're over your time. Can I ask you one more? Go ahead. What do you think would happen if it went back for resentencing? Well, for a different judge, the plea agreement is followed. It's specifically enforced. There is an evidence to support the plus 8. The only evidence before the Court is a plus 4, and it gets followed. And he's already served 22 months. It was an 18-month deal based on what he turned his – how his criminal history support turned out. So even if this case quickly remanded it, he still gets – No, no. On the claim that the government should have kept its mouth shut. So we – There's a lot – Let's assume we sent it back on that ground, that the government should have kept its mouth shut and not said anything. What do you think is going to happen? And it's a different district judge. All right. So you want it to go back to a different district judge? Yeah. I've been very clear about that in my papers for a variety of reasons. He gets time-served. That's what happens. It's – he's served more than the deal recommends. He gets time-served. If there are any other questions. I have two for rebuttal. Let's hear from the government. Good morning, and may it please the Court. Sean Coyle on behalf of the United States. Were you the deputy there, the United States Attorney at the sentencing? I was, Your Honor. This was my deal and my sentencing recommendation. Your Honor, at every step of the proceedings below, I made what I felt was every effort to recommend the sentencing recommendation that was called for under the plea agreement. And I want to note here candidly, I had every incentive for the judge below to follow the party's joint sentencing recommendation. This was a fast-track case. It was – at the time, I was in the fast-track unit of our office. I was handling dozens of these kinds of cases. And had the judge followed our recommendation, there was an appellate waiver provision in the plea agreement that would have been triggered. I advocated on behalf of the joint sentencing recommendation. I made the policy justification arguments that I hoped would convince the sentencing judge to follow our joint recommendation. The claim of breach in this case centers on my bringing United States v. Becker to the attention of the district court judge. And the context of me bringing Becker to the district court's attention was this. Two days before a scheduled sentencing hearing in the case on March 9th, 2010, two days before March 11th sentencing, Mr. Hernandez-Contreras filed an objection to PSR that was really quite broad. It went beyond just saying burglary was categorically overbroad. Also said that none of his prior convictions effectively could be used to form the basis of an enhancement in the case, equippled with a number of criminal history points that were assigned in the PSR. I addressed and opposed each of those. And then in a short discussion said, both on the front end and the back end of this discussion, we recommend that the court enhance Mr. Hernandez-Contreras' sentence by four levels and sentence him at the low end of 18 months. But I felt I had a duty of candor to the court to bring United States v. Becker to the attention of the district court. And I want to make one thing. When you entered into this agreement, did you have and did the defendant have any notion that this was going to come up, that he was at risk of a plus four on top of the four that was recommended? Well, I don't know if Mr. Hernandez-Contreras himself did. I do believe that counsel for Mr. Hernandez-Contreras did. We actually had discussions along that line during the negotiation process. But I think that's kind of neither here nor there, respectfully, because I think what matters is the agreement we entered into. I don't think that anything beyond the agreement should be looked at in terms of what, you know, Mr. Hernandez-Contreras may have anticipated. I think, you know, it's fair to say he thought he was getting a plus four recommendation. But that's what he got. And one thing I think it's important, a distinction to draw here, an important distinction is that there is no modified categorical analysis that is applicable here. I think this court's precedents, including Becker, have indicated pretty clearly that it's totally unsettled whether you can even do a modified categorical analysis when you're talking about a residual clause like Section 16B. This is categorically a crime of violence under Becker and under 16B. And so when Mr. Hernandez-Contreras' objection to the PSR came out and, you know, first of all said none of his priors could enhance his sentence, second of all 459 is categorically overbroad, citing Aguila Montes de Oca and other totally inapplicable cases that had to do with a 16-level increase under the guidelines, and then saying that, you know, it couldn't be an aggravated felony or even if it could, some sort of modified categorical analysis would have to be conducted was totally off-base. And United States v. Becker was never mentioned at any point during the briefing. Again, this is two days prior to the sentencing hearing. Under those circumstances — What troubles me, and I don't mean to be critical because I understand the practicalities of a rocket docket and all of that, is that the same obligation that you had to the judge at sentencing, it seems to me you had when you entered into the plea agreement, in which you say it's plus four instead of plus eight, and I'm just sort of bothered by that. I can understand saying, judge, it's plus eight, but we've stipulated, which you could have done, you could have said it's plus eight because of this conviction, but we stipulate on the Rule 11, whatever it is, Rule 11E or C, I forget which one it is, to a sentence of whatever would have been the sentence had it only been plus four. Wouldn't that have been the more, you know, in terms of your obligation to the court, the more forthright way to deal with it? Absolutely, Your Honor. I totally agree that there is a duty for the government to enter a plea agreement honestly and forthrightly. And I want to make clear that what happened here is — may have had it in his mind that even though the judge has discretion to impose a sentence, whatever he wants, within a guideline range, but this was his exposure under the guidelines and he may not have fully understood the consequences of the plea. That's what troubles me. Well, I would have two responses to that. First of all, the reason that the eight-level enhancement wasn't contemplated in the plea agreement, frankly, and I tried to indicate this to the district court judge in the context of getting the judge to follow a recommendation, it was an oversight on my part. It was a mistake by me. I didn't know. I didn't know about Becker at the time. I didn't know first-degree burglary was an aggravated felony at the time. I just missed it. I knew about the first-degree burglary conviction. That's why this wasn't new information. That's why I couldn't and didn't invoke the portion of the plea agreement that would allow me to change the recommendation based on new information. I just missed it. Now, when the PSR came out and said that it was an aggravated felony, I think it said theft offense or burglary offense, neither of those would be correct. You know, I didn't feel at that point I had an obligation to come forward and say anything. And even if, you know, had Mr. Hernandez-Contreras quibbled with that analysis and said simply, Your Honor, the PSR is wrong. This is not a theft offense under 1101A43. This is not a burglary under 1101A43. I still wouldn't have felt like I had an obligation to come forward in that event. What happened was he said, this cannot be an aggravated felony based on the information before Your Honor. I felt that was wrong, and I felt like Becker needed to be discussed in that context. What's troubling me here is that the defendant really didn't fully appreciate the consequences of the plea. Well, let me tell you, let me talk to you about what the practice is in the Southern District, because you asked that. The practice is to inform the defendant of the maximum penalty, and that happened here. The maximum penalty in the case was 20 years. That's indicated in the plea agreement, and it's also indicated by the judge in the sentencing call or in the plea colloquy. And the judge taking the Rule 11 call or plea typically, and in this case, goes through the guidelines and indicates that they're advisory and that the sentencing judge won't necessarily be obligated to follow them and could sentence up to the maximum. So he was informed of those things, both in the context of signing the plea agreement and at the maximum sentences. You know, a lot of times that's a totally meaningless piece of advice, even under an advisory guideline system. I mean, I'm sorry I don't know the answer to this question, because when I take guilty pleas, I always tell them what the projected guide, get an agreement from the parties as to what they believe the guidelines are likely to be and then tell the defendant subject to new facts that may emerge. But I have something in the back of my mind that suggests that perhaps Rule 11 requires some statement about what the guidelines are likely to be. My reading of Rule 11 is that it requires that the defendant is advised of the maximum penalties, which took place here, and advised of sort of the nature of the sentencing guidelines, what they are and how they work, but not necessarily that a specific guideline calculation has to be gone through. And I would submit, with all due respect, there are problems associated with that practice as well, and I think that's why it's not followed in the Southern District. And that is, at the time that the judge takes the Rule 11 plea, the judge doesn't know what the defendant's criminal history is. And it happens sometimes, and that's why it's contemplated in our plea agreements. The defendant is told that this could be wrong, but we want you to know this is what the lawyers for both sides estimate today, based on the information that they have, is what the guidelines are in this case, subject to any new information that may emerge. And that did happen. Here you have the plea agreement that he went through. I know, but what troubles me is the plea agreement told him a four-level enhancement and gave a guideline range consistent with that, and he comes into court and there he is with an eight-level enhancement. I think the only distinction would be then some sort of colloquy that put the courts imprimatur on the guideline range that was arrived at by the parties. And, you know, our judge's practice is to wait for the PSR to come out, because the PSR may indicate a completely different guideline range. On the breach cases raised by the parties, I just want to make a couple of points. First of all, I think, you know, the Mondragon and Franco Lopez cases raised by Mr. Hernandez-Contreras are easily distinguishable. In Mondragon, the government lawyer made statements regarding the defendant's criminal history in the context of saying, I won't make any kind of sentencing recommendation. And this court held, well, the only reason you could have made those statements is to impact the sentencing determination by the district court judge. This is totally different. There was a completely different motivation for the information that I brought to the district court judge's attention. And as I said, I had every motivation in this case to see the plea agreement followed, and that's what I advocated for throughout. Becker was brought up for an entirely different reason, so that case I think is distinguishable. And then Franco Lopez, same thing. That was a case where the government actually submitted an analysis in conflict with its plea agreement to the probation department. This is completely different. I guess the impression from reading the documents from the probation officer, PSR, Judge Thompson tends to rely very heavily on the probation officer's recommendation. I think that's fair, Your Honor. Is that a fair statement? That's a fair statement. Probation is an arm of the court, and, you know, that analysis is entitled to as much weight as any, I think. I have to tell you that I've always thought that my impression from reading pre-sentence reports is that probation was really an arm of the U.S. attorney. That's not been my experience in our district, Your Honor. Typically our recommendations are not in line. They set out the facts that the United States attorney and the investigating agency tells them, and then they just calculate the guidelines. I mean, I often wonder who they work for. Is it also fair to say that Judge Thompson sort of does his own thing? Your Honor, I think my impression in practicing in front of Judge Thompson is that he is not necessarily a judge who's inclined to follow a plea agreement. He makes an independent determination regarding the appropriate sentence in a case. If there's nothing further, I'll submit. Thank you, Your Honor. A couple quick things. With all due respect to Mr. Coyle, one of the things that he said is that he had advocated consistently throughout this. But I just want to make this very clear.  And you say we, your, one of the headings were defendants' prior convictions enhance his sentence. That's advocating for an increased sentence, and that these are papers, you know, in objection to what the defendant is asking for. And I certainly never said that none of his priors counted. I just consistently advocated for the deal that we had made. And with regard to Becker, that was a categorical analysis case. And I think that's being lost in the discussion here is that a categorical analysis happened there because it was California burglary, just as we have here. So there needed to be a categorical type of discussion. When the government says, look, we stick by the deal, the government said the same thing in Johnson. The government said the same thing in Boatman and in Franco Lopez and in Mondragon. They said we stick by the deal, but, and there was this other stuff. And here the other stuff is filing papers that say the defendant's sentence should be enhanced. I don't think you can do those two things and be consistent. But at the end they say to reiterate, even though Becker is the law of the circuit, the government requests and recommends that defendant's guideline range be enhanced to only four levels. Yes, but we filed papers that said no, and the law requires that you do something different, Judge. And with regard to being an oversight and a mistake, I mean, it's a 1990 case. I can't imagine like a habeas petitioner coming in and saying, I found some new evidence. It's a 1990 case that I just happened over. That's not new. There's something new about that. Strict compliance with Rule 32. Thank you. All right. Thank you. Matters submitted at this time.
judges: Korman, Noonan, Paez